Vinesign Document ID: D853DC2F-062D-4B21-B584-66102933D4G0

Trenton R. Kashima (CA SBN No. 291405)
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU &**
**DEMAY PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
(212) 946-9389

*Attorney for Plaintiff*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK YOUNG, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **PLAINTIFF'S CLASS ACTION COMPLAINT** |
| v. | |
| SOUTHWIND FOODS, LLC, BEAVER STREET FISHERIES, LLC, and WALMART INC., | |
| Defendants. | |

1    Plaintiff, Derrick Young (hereinafter "Plaintiff"), individually and on behalf
2    of all others similarly situated, by his attorneys, alleges the following upon
3    information and belief, except for those allegations pertaining to Plaintiff, which are
4    based on personal knowledge:

5    ## I.    INTRODUCTION

6    1.    This action seeks to remedy the deceptive and misleading business
7    practices of Southwind Foods, LLC ("Southwind"), Beaver Street Fisheries, LLC
8    ("Beaver Street"), and Walmart Inc. ("Walmart" and together with Southwind and
9    Beaver Street, "Defendants") with respect to the processing, preparation, packaging,
10   storage, manufacturing, marketing, and sale of Defendants' frozen shrimp products
11   throughout the state of California and throughout the United States (hereinafter the
12   "Products").

13   2.    Defendants have improperly, deceptively, and misleadingly labeled and
14   marketed its Products to reasonable consumers, like Plaintiff, by omitting and not
15   disclosing to consumers on its packaging that the Products are contaminated with
16   Cesium-137 (Cs-137), a radioactive isotope of the element cesium produced by
17   nuclear fission.

18   3.    Per the recall notice issued by Beaver Street, their following Products
19   were affected:

20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

4.     Per the recall notice issued by Southwind, the following Products were affected:

| PO Number | UPC | Item Description | Item Number | Lot Number | Best by date/ Best before/Sell by date |
|---|---|---|---|---|---|
| 14285 | 011110641182 | FROZEN RAW SHRIMP 31/40 SAND BAR 2LB BAG | 08890 | 14285 | 5/15/2027 |
| 14534 | 042187002736 | FROZEN COOKED SHRIMP 31/40 BEST YET 1LB BAG | 06350 | 095944 / 5/17/2027 | 5/17/2027 |
| 16193 | 042187002736 | FROZEN COOKED SHRIMP 31/40 BEST YET 1 LB BAG | 06350 | 111154 / 05/10/2027 | 5/10/2027 |
| 14536 | 042187002743 | FROZEN COOKED SHRIMP 41/50 BEST YET 1LB BAG | 06062 | 095946 / 05/17/2027 | 5/17/2027 |
| 16014 | 041130812392 | FROZEN LARGE COOKED SHRIMP 31/40 ARTIC SHORES 1LB BAG | 08224 | 16014 | 5/15/2027 |
| 16010 | 041130810497 | FROZEN SMALL COOKED SHRIMP 61/70 ARTIC SHORES 1LB BAG | 08127 | 05/20/2027 / 16010 | 5/20/2027 |
| 16010 | 041130810411 | FROZEN SMALL COOKED SHRIMP 91/120 WHITE ARCTIC SHORES 12OZ BAG | 08128 | 05/21/2027 / 16010 | 5/21/2027 |
| 16010 | 041130811685 | FROZEN COOKED SALAD SHRIMP 150-200 ARCTIC SHORES 6OZ BAG | 08129 | 05/21/2027 / 16010 | 5/21/2027 |
| 17999 | 829944010612 | FROZEN RAW SHRIMP 16/20 GREAT AMERICAN 2LB BAG | 06021 | 17999 | 5/8/2027 |
| 18703 | 041512179471 | FROZEN RAW SHRIMP 16/20 FIRST STREET 2LB BAG | 06171 | 18703 | 6/7/2027 |
| 18391 | 829944010698 | FROZEN RAW SHRIMP 71/90 GREAT AMERICAN 2LB BAG | 06102 | 18391 | 6/7/2027 |
| 19266 | 829944092540 | FROZEN COOKED SHRIMP MEAT GREAT AMERICAN 1LB BAG | 08523 | 19266 | 6/17/2027 |
| 18399 | 829944012173 | FROZEN COOKED SHRIMP 41/60 GREAT AMERICAN 2LB BAG | 06812 | 18399 | 6/12/2027 |
| 15855 | 829944010636 | FROZEN RAW SHRIMP 26/30 GREAT AMERICAN 2LB BAG | 06875 | 15855 | 6/9/2027 |

5.     As described in further detail below, the Products contain Cesium-137, which even a low dosages can cause elevated risk of cancer, resulting from damage to DNA within living cells of the body.[1] This is particularly true here, where exposure to Cesium-137 ingestion or inhalation which allows the radioactive material to be distributed in the soft tissues, especially muscle tissue, which increases cancer risk.[2]

6.     Cesium-137 is the most common radioactive form of cesium (chemical symbol Cs).  It is one of the byproducts of nuclear fission processes in nuclear reactors and nuclear weapons testing. Cesium-137 bonds with chlorides to make a crystalline powder and reacts in the environment like table salt (sodium chloride). It moves easily through the air, dissolves easily in water, and binds strongly to soil

---

[1] https://www.epa.gov/radiation/radionuclide-basics-cesium-137 (last visited on September 9, 2025)

[2] *Id.*

CLASS ACTION COMPLAINT

and concrete, but does not travel very far below the surface.[3] Cesium-137 in foods is of particular concern in areas which have been associated with nuclear disasters or nuclear weapons testing. Indeed, consumers have shown their preference to avoid foods associated with or grown in areas that have higher levels of Cesium-137 and other nuclear byproducts. The Class Members are no different.

7. Consumers like the Plaintiff trust manufacturers such as Defendants to sell products that are safe and free from known harmful substances, including Cesium-137.

8. Plaintiff and those similarly situated (hereinafter "Class Members" or the "Class") certainly expect that the frozen shrimp products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

9. Unfortunately for consumers like Plaintiff, the Products they purchased contain Cesium-137. Defendants' own recall and other testing confirmed and demonstrated the presence of Cesium-137 in the Plaintiff's product

10. Defendants use a marketing and advertising campaign that omits from the packaging that the Products contain Cesium-137. Knowing of the presence of Cesium-137 is material to reasonable consumers. The presence of Cesium-137 was solely within the possession of Defendants, and consumers could only obtain such information by conducting testing by sending the Products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a radioactive product when in fact they are purchasing a product contaminated with Cesium-137.

---

[3] *Id.*

CLASS ACTION COMPLAINT

11.    A representative example of Defendants' lack of disclosure on the Products is depicted below:



Nowhere do Defendants disclose the presence of Cesium-137.

12.    Despite issuing a recall, Defendants' actions still injured consumers. More specifically, Defendants have designed their recall to ensure that most consumers will be unable to receive relief, provided that they even get notice of the recall.

13.    Accordingly, Plaintiff brings this class action to recover damages and restitution from Defendants' unlawful and unfair business practices.

II.    **PARTIES**

A.    **Plaintiff**

14.    Plaintiff is a citizen and resident of San Bernardino County, California. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that possibly contained Cesium-137. More specifically, during the class period Plaintiff purchased Great Value Frozen Raw Shrimp EZ-Peel & Deveined Tail-On 21-25 Per lb at a Walmart store in Long Beach, California at an approximate retail price of $7.79. Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

15.    Had Defendants not made the false, misleading, and deceptive

- 4 -

representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. However, if the Products did not contain radiological contamination, he would be willing to purchase the Products in the future.

16. The Products Plaintiff received were worthless because they possibly contained Cesium-137. Alternatively, Plaintiff paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**B. Defendants**

17. Defendant Southwind is a California limited liability company with its principal place of business in Carson, California.

18. Defendant Beaver Street is a Florida corporation with its principal place of business in Jacksonville, Florida.

19. Defendant Walmart is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

20. Defendants process, prepare, package, store, manufacture, market, distribute, and sell the Products throughout the United States, including California and the Central District. Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## III. <u>JURISIDICTION AND VENUE</u>

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs

22.     This Court has personal jurisdiction over Defendants because this action arises out of and relates to Defendants' contacts with this forum. Specifically, Defendants knowingly placed the Products into the stream of commerce directed into this District. Moreover, Defendants make the Products available at retailers throughout this District.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this District, Defendants have caused harm to Plaintiff and other Class members in this District, and otherwise have purposefully availed themselves of the markets in this District, through the promotion, sale, and marketing of the Products in this District.  A substantial part of the events or omissions giving rise to the Class's claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendants' Fraudulent, Unfair, and Unlawful Actions

24.     Defendants process, prepare, package, store, manufacture, market, and sell food products.

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendants, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.  This is particularly true with regards to foods contaminated with radioactive particles, such as Cesium-137. For example, consumers have shown a clear preference to avoid foods associated with areas near the nuclear accident sites in Fukushima, Japan or Chernobyl, Ukraine due to the potential harmful effects.  Accordingly, the value of food from these areas is significantly lower, if a market can be found for them at all.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Cesium-137, especially at the point of sale, and therefore must and do rely on Defendants to

- 6 -

truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27.    Consumers' preference for foods not contaminated with radioactive particles, such as Cesium-137, is not based on irrational preference.  Instead, these radioactive particles represent a real health risk, for example, Cesium-137 contamination has been associated with increased cancer.  For example, cancer rates increased dramatically after exposure to Cesium-137 in the wake of the Chernobyl nuclear accident in the former Soviet Union.  Those effects are still being felt today

28.    The Products' packaging does not identify Cesium-137. Indeed, Cesium 137 is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of Cesium-137 in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, Cesium-137.

29.    However, the Products contain, or are at risk of containing, Cesium-137. This has been admitted by Defendants through their respective recalls.

30.    Defendants are large and sophisticated corporations that have been in the business of processing, preparing, packaging, storing, manufacturing, marketing, and the sale of food products for many years, including the contaminated Products.

31.    Defendants are in the unique and superior position of knowing the ingredients and raw materials used in the processing of their Products and possess unique and superior knowledge regarding the processing of the Products, the packaging process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of Cesium-137, as well as the ability to test the Products for Cesium-137 contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendants.

32.    Accordingly, Defendants possess superior knowledge regarding the risk involved in the preparation, processing, and production of their Products. Such

knowledge is not readily available to consumers like Plaintiff and Class Members.

33. Additionally, by marketing the Products as shrimp for human consumption, Defendants made a partial disclosure, which was misleading without the disclosure of the Cesium-137 contamination.

34. Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

35. Therefore, Defendants' false, misleading, and deceptive omissions regarding the Products containing Cesium-137 are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

36. Defendants' misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendants know that if they had not omitted that the Products contained Cesium-137, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

37. Consumers rely on marketing and information in making purchasing decisions.

38. By omitting that the Products include Cesium-137 on the labels of the Products throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase a product that contained Cesium-137.

39. Defendants' deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

40. In making the false, misleading, and deceptive omissions described herein, Defendants knew and intended that consumers would pay a premium for a

- 8 -

product marketed without Cesium-137 over comparable products not so marketed.

41.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for Products that were not what Defendants represented;

b.    Paid a premium price for Products that were not what Defendants represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented; and

e.    Were denied the benefit of the properties of the Products Defendants promised.

42.    Had Defendants not made the false, misleading, and deceptive omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

**B.    Defendants' Recall was Illusory**

43.    Through the United States Food & Drug Administration ("FDA"), Defendant Southwind issued a recall of its Products on August 21, 2025.[4]  The FDA specifically noted that the products could pose a "potential health concern" for

---

[4] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/southwind-foods-llc-recalls-frozen-shrimp-because-possible-health-risk (last visited on September 9, 2025)

CLASS ACTION COMPLAINT

people exposed to low levels of Cesium-137 over time.[5]  Defendant Beaver Street, followed suit shortly thereafter, issuing a recall of its Products on August 22, 2025.[6] "If you have recently purchased raw frozen shrimp from Walmart that matches this description, throw it away," FDA officials said in a statement.[7]

44.     Yet, these recalls do little to provide relief to affected consumers.  To be eligible for a refund, a consumer must retain the Products. "**Consumers who have purchased the recalled frozen shrimp should not consume the product and should dispose of the product or return it to the place of purchase for a full refund**" (emphasis added).[8]  This recall was deliberately designed to preclude the vast majority of consumers from receiving a recall.

45.     Defendants are well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away.  Indeed, this was the instructions provided by the FDA to various media outlets.[9]  Additionally, many consumers have already used the Products and disposed of the packaging.  This makes returning the Product difficult, if not impossible.

---

[5] https://www.npr.org/2025/08/20/nx-s1-5507971/walmart-recall-frozen-shrimp-radioactive#:~:text=Walmart%20has%20recalled%20frozen%2C%20raw,over%20time%2C%20FDA%20officials%20said. (last visited on September 9, 2025)

[6] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beaver-street-fisheries-llc-recalls-great-value-frozen-raw-shrimp-because-possible-health-risk (last visited on September 9, 2025)

[7] https://www.npr.org/2025/08/20/nx-s1-5507971/walmart-recall-frozen-shrimp-radioactive#:~:text=Walmart%20has%20recalled%20frozen%2C%20raw,over%20time%2C%20FDA%20officials%20said. (last visited on September 9, 2025)

[8] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/southwind-foods-llc-recalls-frozen-shrimp-because-possible-health-riskble-health-risk (last visited on September 9, 2025)

[9] *See, e.g.,* https://www.npr.org/2025/08/20/nx-s1-5507971/walmart-recall-frozen-shrimp-radioactive#:~:text=Walmart%20has%20recalled%20frozen%2C%20raw,over%20time%2C%20FDA%20officials%20said. (last visited on September 9, 2025)

46.    Defendants are also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

47.    Additionally, note of the recall was not specifically targeted to reach potential customers of the Products.  Unlike class notice, which is designed to reach the majority of class members, Defendants only issued a small number of press releases and other notices.

48.    Accordingly, Defendants' recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

49.    The class action remedy is superior to Defendants' failed recall in every conceivable fashion.

50.    Accordingly, Defendants' conduct violated and continues to violate, *inter alia*, California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200, *et seq*.).  Defendants also breached and continue to breach their warranties regarding the Products.

51.    Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## V.    CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution.

53.    Plaintiff seeks to represent a nationwide class defined as:

All persons in the United States who purchased the Products for personal or household use within any applicable limitations period (the "Class").

Additionally, or in the alternative, the Plaintiff seeks to represent individual subclass:

The "California Subclass"
All persons who purchased the Products in California for personal or household use within any applicable limitations period.

Specifically excluded from the Class and Subclass are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

54.    The Class and Subclass are collectively referred to as the "Classes."

55.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment to the complaint or narrowed at class certification.

56.    The Classes are suitable for Class Certification under Rule 23(b)(3).

57.    **Numerosity.** The members of the proposed Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of individuals that are members of the proposed Class. Although the precise numbers of proposed members are unknown to Plaintiff, the true numbers of members of the Class are known by Defendants. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution and sales records of Defendants and third-party retailers and vendors.

58.    **Typicality.** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, purchased the Products, which were worthless due to the presence of Cesium-137, a

harmful and carcinogenic radiological impurity. The representative Plaintiff, like all members of the Class, has been damaged by Defendants' misconduct in the very same way as the members of the Class. Further, the factual bases of Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

59.    **Existence and predominance of common questions of law and fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.    Whether Defendants' false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

60.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that

are antagonistic to those of the Class.

61. **Predominance**. Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

62. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Class are relatively small compared to the burden and expense of individual litigation of his claims against Defendants. I would, thus, be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

63. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## VI.    CAUSES OF ACTION

### COUNT I
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

64.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

65.    Plaintiff brings this claim on behalf of himself and the California Subclass against all Defendants.

66.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

67.    Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

　　　　a.    by knowingly and intentionally concealing from Plaintiff and the California Subclass that the Products do or possibly contain Cesium-137 while obtaining money from the California Subclass;

　　　　b.    by marketing Products as safe for their intended use;

　　　　c.    by purposefully processing, preparing, packaging, storing, manufacturing, marketing, and selling the Products to contain Cesium-137 that cause increase risk for cancer and even death; and

　　　　d.    by violating the other California laws alleged herein, including the False Advertising Law and Consumers Legal Remedies Act.

68.    Defendants' misrepresentations, omissions, and concealment were material to the Plaintiff and California Subclass, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely

- 15 -

on the misrepresentations, concealment, and omissions.

69. Defendants' material misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to make their purchases of the Products

70. Absent those misrepresentations and omissions, Plaintiff and the California Subclass would not have purchased the Products or would not have purchased the Products at the prices they paid.

71. Defendants' actions are also unfair. Defendants engaged in these illegal practices for significant financial gain, which are unlawful and violate state and federal drug laws, are unreasonably dangerous to Plaintiff and the California Subclass members, and not outweighed by any benefit. Marketing adulterated foods in a systematic manner is unethical, unscrupulous, and offensive. Plaintiff and the California Subclass had no reasonable way of testing the Products before purchasing them and could not have avoid their injury.

72. Accordingly, Plaintiff and the California Subclass have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

73. Defendants' violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

74. Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not. On behalf of himself and the California Subclass, Plaintiff seeks an order for the restitution of all monies from the sale of the

Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT II
## VIOLATIONS OF CALIFORNIA FLASE ADVERTISING LAW
### Cal. Bus. & Prof. Code § 17500, et seq.
### (On Behalf of Plaintiff and the California Subclass)

75.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76.    Plaintiff brings this claim on behalf of himself and the California Subclass against all Defendants.

77.    The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*. prohibits false advertising.

78.    Defendants, Plaintiff, and the California Subclass members are "persons within the meaning of Cal. Bus. & Prof. Code § 17506.

79.    Defendants violated the FAL by causing to be made or disseminated through California and the United States, through advertising, labeling, marketing and other publications, statements regarding the safety of the Products that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and the California Subclass.

80.    The omissions regarding the safety of the Products as set forth in this Complaint were material and had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the California Subclass, about the true safety of the Products.

81.    In purchasing the Products, Plaintiff and the California Subclass relied on the omissions of Defendants with respect to the safety of the Products.

82.    Defendants did not disclose that the Products were distributed and sold with Cesium-137 that causes increase risk for cancer, and even death.

- 17 -

83. Plaintiff and the California Subclass have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Had they known the truth, Plaintiff and the California Subclass would not have purchased the Products or would have paid significantly less for them.

84. Plaintiff and the California Subclass had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and the California Subclass did not, and could not, unravel Defendants' deception on their own.

85. Defendants had an ongoing duty to Plaintiff and the California Subclass to refrain from unfair or deceptive practices under the FAL in the course of their business. Specifically, the Defendants owed Plaintiff and the California Subclass a duty to disclose all the material facts concerning the ingredients in and the safety of the Products because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and the California Subclass, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

86. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

87. Defendants' violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

88. Plaintiff requests that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices.

89. Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to

damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.   On behalf of himself and the California Subclass, Plaintiff seeks an orders for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT III
### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750, et seq.
### (On Behalf of Plaintiff and the California Subclass)

90.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff brings this claim on behalf of himself and the California Subclass against all Defendants.

92.     Plaintiff and the California Subclass members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

93.     Defendants, Plaintiff, and the California Subclass are "persons" within the meaning of Cal. Civ. Code § 1761(c).

94.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

95.     The California Legal Remedies Act ("CLRA") prohibits "unfair method of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

96.     Defendants engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, intentionally and

knowingly made material omission regarding the safety of the Products, as detailed above.

97.    Specifically, by representing the Products as safe for human consumptio and/or free from defects (*i.e.*, Cesium-137), and by failing to disclose and actively concealing the dangers and safety risk posed by the Products, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.    Representing that the Products have characteristics, uses, benefits and qualities which they do not have.

b.    Representing that the Products are of a particular standard, quality and grade when they are not.

c.    Advertising the Products and/or with the intent not to sell them as advertised.

d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

98.    Additionally, in the various channels of information through which Defendants sold and marketed the Products, Defendants failed to disclose material information concerning the Products, which they had a duty to disclose.

99.    Defendants had a duty to disclose the presence or potential presence of Cesium-137 because, as detailed above: (a) Defendants knew about the presence potential presence of Cesium-137 in the Products; (b) Defendants had exclusive knowledge of material facts not known to the general public or the other California Subclass; (c) Defendants actively concealed material facts concerning the Products from the general public and Plaintiff and the California Subclass; (d) Defendants made partial representations about the Products that were misleading because they did not disclose the full truth; and (e) the omission regarded a serious safety defect that based a risk to the health of consumers.

100.  Defendants' unfair or deceptive acts or practices, including their concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and California Subclass, about the true safety, quality, and true value of the Products.

101.  Plaintiff and the California Subclass have suffered injury in fact and actual damages resulting from Defendants' material omissions.

102.  Defendants' violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public, and therefore affect the public interest.

103.  Defendants are on notice of the issues raised in this Count and this Complaint by way of, among other things, the recalls they have initiated, as well as their own intrinsic knowledge of defect.

104.  Plaintiff has also sent a notice letter to Defendants in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct the actions described therein within thirty (30) days of the notice letter.

105.  If Defendants fail to do so, Plaintiff will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff and California Class Members are entitled under the CLRA.

106.  Attached hereto as Exhibit A is the venue affidavit required by CLRA, Cal. Civ. Code § 1780(d).

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Class)

107.  Plaintiff repeats and realleges each and every allegation contained in all

the foregoing paragraphs as if fully set forth herein.

108.   Plaintiff brings this cause of action individually and on behalf of (1) all consumers who purchased Products directly from Defendants (for which there is privity), (2) all consumers whose state law has abrogated the privity requirement for implied warranty of merchantability claims seeking economic loss, and (3) all California Subclass members.

109.   Defendants impliedly warranted that their Products were merchantable, fit, and safe for ordinary use.

110.   Under the UCC, which has been uniformly adopted in all states but Louisiana, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314(1).

111.   Defendants are a "merchant" for the purposes of UCC § 2-314.

112.   The Products were goods under UCC 2-105(1).

113.   To be merchantable, the goods, among other things, must be (1) "fit for the ordinary purposes for which such goods are used" and (2) "pass without objection in the trade under the contract description[.]" UCC § 2-314(2)(a), (c). Defendants have violated these implied warranties.

114.   First, the Products contain Cesium-137, thus, they are not fit for the ordinary purposes for which such Products are used.  Nor are they of merchantable quality because they do not pass without objection in the trade under the contract description. Indeed, the Products had to be recalled, evidencing that they were not of merchantable quality.

115.   Indeed, the levels of Cesium-137 contained in the Products has been indisputably linked to negative health consequences.

116.   Class Members purchased the Products in reliance upon the fact that the Products were merchantable, fit, and safe for ordinary use for which they were sold. They were not. The defect in the Products (*i.e.* the presence of Cesium-137) render

the Products unfit for human consumption or application as a food product.

117.    Moreover, the Products were not altered by Plaintiff or Class Members; Plaintiff and Class Members were foreseeable users of the Products; and Class Members used the Products in the manner intended.

118.    Contrary to Defendants' implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold.

119.    By reason thereof, Plaintiff and the other Class Members have suffered damages in an amount to be proven at trial.  The damages are equal to the difference between the price of the Product warranted and the adulterated Product delivered. Given that adulterated Products cannot be legally sold, they likely had no value, and the damages would, therefore, be the full purchase price of the Products.

## COUNT V
### Negligent Omission
### (On Behalf of Plaintiff and the Classes)

120.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

121.    Through their labeling and advertising, Defendants made representation to the Plaintiff and the class members concerning the quality, safety, and purity characteristics of their Products.

122.    Defendants have a common law duty to provide accurate and non-misleading information to consumers with respect to the quality, safety, and purity characteristics of its Products, including defects, and to not omit such material quality, safety, and purity characteristic information. More specifically, Defendants have the duty and obligation not to sell products that were adulterated with Cesium-137. This duty existed independently from any contractual obligations between the parties.

123.    Defendants also have a common law duty (and a duty under appliable food safety laws) to use reasonable care in the processing and packing of their

- 23 -

Products, including the duty to perform reasonable tests and inspections of their Products to discover latent contamination (such as the presence of Cesium-137). This duty existed independently from any contractual obligations between the parties.

124.    Defendants breached their duty to perform reasonable tests and inspections of their Products for latent contamination (*i.e.* the presence of Cesium-137) prior to selling those Products to consumers.

125.    Plaintiff and the other Class and Subclass Members reasonably relied on Defendants' representations that the Products were food products, which could be safely consumed as such.  Because of the presence of Cesium-137, the Products should not have been represented as such.

126.    Moreover, Plaintiff was a foreseeable victim of Defendants' misconduct Defendants knew or should have known that processing and selling Products containing Cesium-137 rendered the Products adulterated and that Plaintiff would suffer the very financial loss which ultimately occurred.

127.    Defendants' breaches of their duties were a direct and proximate cause of the economic harms to Plaintiff and Class Members.

128.    By reason thereof, Plaintiff and the other Class and Subclass Members have suffered damages in an amount to be proven at trial

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

129.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

130.    Plaintiff asserts this Unjust Enrichment count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the California Subclass, in the alterative, if legal remedies are not available.

131.    By reason of their conduct, Defendants caused damages to Plaintiff and

Class Members.

132.  Plaintiff and Class members conferred a benefit on the Defendants by paying for worthless Products or by overpaying for the Products at prices that were artificially inflated (i.e. price premium) by Defendants' concealment that the Products do or possibly contain Cesium-137.

133.  As a result of Defendants' fraud and deception, Plaintiff and Class Members were not aware of the true facts concerning the Products and did not benefit from the Defendants' misconduct.

134.  Defendants knowingly benefitted from their unjust conduct. They sold Products for more than what the Products were worth, at the expense of Plaintiff and Class members.

135.  Defendants readily accepted and retained these benefits from Plaintiff and Class members.

136.  It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Products were safe, and intentionally concealed, suppressed, and failed to disclose to consumers that the Products do or possibly contain Cesium-137.

137.  Plaintiff and Class Members would not have purchased the Products or would have paid less for them, had Defendants not concealed that the Products do or possibly contain Cesium-137.

138.  Plaintiff and Class Members do not have an adequate remedy at law.

139.  Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiff and Class Members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Classes, that the Court enter judgment in his favor and against

Defendants as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendants' conduct violates the causes of action referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    Awarding pre-judgment and post-judgment interest;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Respectfully submitted,

DATED: September 24, 2025    */s/ Trenton R. Kashima*

Trenton R. Kashima (CA SBN No. 291405)
BRYSON HARRIS SUCIU & DEMAY PLLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
(212) 946-9389
tkashima@brysonpllc.com

*Attorney for Plaintiff*
*and the Proposed Class*

- 26 -

## **AFFIDAVIT OF DERRICK YOUNG**

I, Derrick Young, declare as follows:

1.    I am the Plaintiff in the referenced case and specifically the Plaintiff in the Cause of Action for Violations of the Consumer Legal Remedies Act.  I am a competent adult, over eighteen years of age, and a resident of the State of California. I am making this declaration in support of my Class Action Complaint.

2.    I purchased the Great Value Frozen Raw Shrimp EZ-Peel & Deveined Tail-On 21-25 Per lb at a Walmart store in Long Beach, California in or around August 2025. As such, the transaction which gives rise to this complaint occurred within Los Angeles County. Additionally, Defendants process, prepare, package, store, manufacture, market, distribute, and sell the Great Value Frozen Raw Shrimp EZ-Peel & Deveined Tail-On 21-25 Per lb in Los Angeles County, thus Defendants conduct substantial business within this County.

3.    Accordingly, pursuant to California Code of Civil Procedure, section 1780, Central District of California is the proper venue for Plaintiff's California Consumer Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on __9/24/25__ in Victorville, CA.

*Derrick Young*

_____
Derrick Young